**SCOTT E. BRADFORD, OSB #062824**
United States Attorney
District of Oregon
**ANDREW KARTCHNER, OSB #135784**
Assistant United States Attorney
Andrew.Kartchner@usdoj.gov
1000 SW Third Avenue, Suite 600
Portland, OR 97204-2936
Telephone: (503) 727-1019
Attorneys for United States of America

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | Case No. 3:26-cv- |
| Petitioner, | |
| | **PETITION TO ENFORCE** |
| v. | **ADMINISTRATIVE SUBPOENAS** |
| **MULTNOMAH COUNTY DEPARTMENT OF COMMUNITY JUSTICE; SUZANNE BROWN-MCBRIDE, Deputy Director, Multnomah County Department of Community Justice; CLACKAMAS COUNTY SHERIFF'S OFFICE PAROLE & PROBATION DIVISION; ANGELA BRANDENBURG, Clackamas County Sheriff; MARION COUNTY SHERIFF'S OFFICE, COMMUNITY CORRECTIONS DIVISION; NICHOLAS HUNTER, Marion County Sheriff; WASHINGTON COUNTY COMMUNITY CORRECTIONS PROBATION AND PAROLE; NATHAN GAOIRAN, Director, Washington County Community Corrections Probation and Parole;** | |
| Respondents. | |

**Page 1**       **Petition to Enforce Administrative Subpoenas**

The United States of America respectfully petitions this Court for an order directing enforcement of Homeland Security Investigations ("HSI") subpoenas issued and served upon MULTNOMAH COUNTY DEPARTMENT OF COMMUNITY JUSTICE; SUZANNE BROWN-MCBRIDE, Deputy Director, Multnomah County Department of Community Justice (hereinafter "Multnomah County"); CLACKAMAS COUNTY SHERIFF'S OFFICE PAROLE & PROBATION DIVISION; ANGELA BRANDENBURG, Clackamas County Sheriff (hereinafter "Clackamas County"); MARION COUNTY SHERIFF'S OFFICE, COMMUNITY CORRECTIONS DIVISION; NICHOLAS HUNTER, Marion County Sheriff (hereinafter "Marion County"); WASHINGTON COUNTY COMMUNITY CORRECTIONS PROBATION AND PAROLE DIVISION; NATHAN GAOIRAN, Director, Washington County Community Corrections Probation and Parole Division (hereinafter "Washington County") (collectively hereinafter "Respondents").

## I.    INTRODUCTION

1.    Since passage of Oregon House Bill 3265 in 2021, Oregon prisons have consistently refused to cooperate with federal detainers requesting officials turn over to U.S. Immigration and Customs Enforcement ("ICE") all criminal aliens upon completion of their state sentences in this judicial district. *See* Ex. A, Declaration of Jeffrey Chan ("Chan Decl.") at ¶ 5. In addition, rather than allowing federal officials to investigate prisoners to ascertain whether they are citizens of the United States and potentially subject to removal and detention, Oregon has ignored all federal requests for information or access to prisoners for interviews since passage of Oregon House Bill 3265. *Id.* at ¶ 3–5.

2.    In order to obtain information relevant to its investigative work, on or about January 22, 2026, HSI issued and served subpoenas upon Respondents pursuant to 8 U.S.C. § 1225(d)(4)

**Page 2**        **Petition to Enforce Administrative Subpoenas**

and 8 C.F.R. § 287.4(c). Exhibit B, Declaration of Todd Rignel ("Rignel Decl.") at ¶ 14; Rignel Decl. Ex. 1 (subpoenas) and Ex. 2 (certificates of service).

3.      The information sought by the subject subpoenas involves individuals who have committed criminal acts against Oregon citizens including rape, attempted murder, sexual abuse, using a child in a display of sexually explicit conduct, assault, strangulation, unlawful use of a weapon, burglary, and kidnapping, and are subject to removal from the United States. Rignel Decl. ¶¶ 6–9. The subpoenas seek information that would allow HSI to locate these dangerous, criminal aliens who are subject to removal from the United States pursuant to the Immigration and Nationality Act ("INA"). *See* Rignel Decl. ¶ 16. The United States does not oppose reasonable redactions of victim information from materials provided in response to the subpoenas.

4.      Respondents have not produced any records in response to the subpoenas. Rignel Decl. ¶ 25; Rignel Decl. Ex. 3.

5.      This Court should enforce the subpoenas, as issued, under 8 U.S.C. § 1225(d)(4)(B) because they meet the applicable standards for administrative subpoenas: (1) they are issued within the federal agency's statutory authority; (2) they seek information reasonably relevant to the inquiry by HSI; and (3) they are not too indefinite.

## II.    JURISDICTION AND VENUE

6.      This Court has jurisdiction over this Petition under 28 U.S.C. §§ 1331, 1345 and 8 U.S.C. § 1225(d)(4)(B), which provides for a subpoena enforcement action to be filed in "[a]ny United States district court within the jurisdiction of which investigations or inquiries are being conducted by an immigration officer." The investigations of the criminal aliens at issue are being conducted within this judicial district.

**Page 3          Petition to Enforce Administrative Subpoenas**

7.      Venue is proper in this district under 8 U.S.C. § 1225(d)(4)(B) because HSI is conducting its investigations within this district and, under 28 U.S.C. § 1391(b)(1), Respondents are located within this district.

## III.    BACKGROUND

8.      The Federal Government has "broad, undoubted power over the subject of immigration and the status of aliens." *Arizona v. United States*, 567 U.S. 387, 394 (2012).

9.      Congress has enacted laws governing the entry, presence, status, and removal of aliens within the United States. These laws codify the Executive Branch's authority to inspect, investigate, arrest, detain, and remove aliens in accordance with those provisions. *See, e.g.,* 8 U.S.C. §§ 1182, 1225–28, 1231, and 1357.

10.     ICE is responsible for the investigation, arrest, detention, and removal of aliens within the United States. 6 U.S.C. § 251 (transferring to the Secretary of Homeland Security functions relating to the inspection, investigation, detention and removal of criminal aliens); *Clark v. Suarez Martinez*, 543 U.S. 371, 374 n.1 (2005) (noting that the powers of investigation and detention of aliens formerly provided to the Attorney General were transferred to the Department of Homeland Security and its components). As the investigative arm of ICE, HSI collaborates with ICE Enforcement and Removal Operations ("ERO") in investigating, identifying, and locating criminal aliens who are amenable to removal and/or criminal prosecution, as both HSI special agents and ERO deportation officers are "immigration officers" as defined in 8 U.S.C. § 1101(a)(18). Rignel Decl. at ¶ 3. In executing these duties, HSI and ERO routinely request information from local, state, and federal law enforcement agencies to make removability determinations, to prepare for targeted arrests, and to determine the location of criminal aliens. *Id.* at ¶ 4. To further aid their investigations, HSI and ERO utilize a variety of law enforcement

**Page 4        Petition to Enforce Administrative Subpoenas**

systems and publicly available databases to obtain the most up-to-date criminal history, addresses, and associations of a criminal alien. *Id.* at ¶ 5.

**A. This Court's order to comply with previously served subpoenas**

11.    In 2025, HSI issued subpoenas to Respondents seeking documents relating to ten criminal aliens in Oregon—the same type of documents being sought in the current subpoenas and this Petition. All four Respondent counties declined to comply, and the United States filed a petition with this Court to enforce the subpoenas. Rignel Decl. at ¶ 26. The Court subsequently granted the petition and the Respondents complied with the subpoenas. *United States v. Multnomah Cnty. Dep't of Cmty. Just.*, No. 6:25-CV-01784-MC at 2–4 (D. Or. Nov. 24, 2025); Rignel Decl. at ¶ 26.

12.    Relatedly, Respondent Marion County filed a declaratory judgment action seeking clarification from this Court on how to respond to immigration-related administrative subpoenas given an apparent conflict between Oregon's sanctuary laws, Oregon's public records laws, and federal law. *See* Complaint for Declaratory Relief, *Marion County v. Kotek, et al.*, 6:25-cv-01464-MC (D. Or. August 18, 2025). The Court dismissed that action, and Respondent Marion County has filed a notice of appeal.

13.    Federal immigration authorities used the information provided by the Respondent Counties to locate and arrest a violent offender Oregon public officials released into the community after serving a 100-month sentence for rape and sodomy, despite a federal immigration detainer being in place at the time of his release. Rignel Decl. at ¶27.

**B. Information Regarding the Subjects of the At-Issue Subpoenas**

14.    The criminal aliens who are the subject of the current subpoenas are all at large. Specific information about each individual listed in the subpoenas is as follows:

**Page 5        Petition to Enforce Administrative Subpoenas**

**Clackamas County**:

15.    **Criminal Alien 3**: According to law enforcement databases, this criminal alien was convicted in 2019 of three counts of Sexual Abuse in the First Degree involving a victim under the age of 14. He was sentenced to a total of 225 months in prison and 45 months of post-prison supervision. ICE issued a detainer to Oregon Department of Corrections (ODOC) on or about July 1, 2019, that was not honored. Oregon officials released this criminal alien into the community without notifying ICE. He is a native and citizen of Mexico illegally present in the United States. Based upon a review of government databases, he is removable under 8 U.S.C. § 1182(a)(6)(A)(i) because he is an alien who entered the United States without inspection, admission, or parole at a time or place other than as designated by the Attorney General. Rignel Decl. ¶ 6.a.

**Marion County**:

16.    **Criminal Alien 1**: On or about February 25, 2026, the United States withdrew Criminal Alien 1 from the subpoena issued to Marion County.

17.    **Criminal Alien 4**: On or about March 26, 2026, the United States withdrew Criminal Alien 4 from the subpoena issued to Marion County.

18.    **Criminal Alien 5**: According to law enforcement databases, this criminal alien was convicted of one count of Sexual Abuse in the First Degree in 2018. He was sentenced to 75 months in prison, 45 months of post-prison supervision, and required to register as a sex offender. ICE issued a detainer to ODOC on or about April 19, 2019, that was not honored. A detainer was also issued on or about April 28, 2025, and on or about June 18, 2025, to the Marion County Sheriff's Office; neither were honored. Oregon officials released this criminal alien into the community without notifying ICE. He is a native and citizen of Mexico illegally present in the United States. Based upon a review of government databases, he is subject to re-instatement of a

**Page 6**        **Petition to Enforce Administrative Subpoenas**

prior removal order dated October 22, 2004, under 8 U.S.C. § 1231(a)(5) because he is an alien who has reentered the United States illegally after having been removed or having departed voluntarily, under an order of removal, and is subject to a reinstatement of the prior order of removal from its original date and is not subject to reopening or review. Additionally, he is removable under 8 U.S.C. § 1182(a)(6)(A)(i) because he is an alien who entered the United States without inspection, admission, or parole at a time or place other than as designated by the Attorney General. Rignel Decl. ¶ 7.a.

19.    **Criminal Alien 6**: According to law enforcement databases, this criminal alien has two prior convictions in Oregon. First, he was convicted in 1996 of one count of Sexual Abuse in the Third Degree and sentenced to several years of supervised probation and required to register as a sex offender. Later, this criminal alien was convicted in 2018 of Sexual Abuse in the First Degree and sentenced to 75 months in prison and 45 months of post-prison supervision. ICE issued a detainer to ODOC on or about November 1, 2020, that was not honored. Oregon officials released this criminal alien into the community without notifying ICE. He is a native and citizen of Mexico and a Lawful Permanent Resident. Based upon a review of government databases, he is removable under 8 U.S.C. § 1227(a)(2)(A)(iii) because he is an alien who has been convicted of an aggravated felony at any time after admission. Rignel Decl. ¶ 7.b.

20.    **Criminal Alien 7**: According to law enforcement databases, this criminal alien was convicted in 2018 of Unlawful Use of a Weapon, Attempted Rape in the First Degree, Assault in the Fourth Degree–Constituting Domestic Violence, and Strangulation– Constituting Domestic Violence, and sentenced to a total of 160 months in prison, 24 months of post-prison supervision, and required to register as a sex offender. ICE issued a detainer to ODOC on or about November 5, 2020, that was not honored. Oregon officials released this criminal alien into the community in

**Page 7    Petition to Enforce Administrative Subpoenas**

2024 without notifying ICE. He is a native and citizen of Mexico illegally present in the United States. Based upon a review of government databases, he is removable under 8 U.S.C. § 1182(a)(2)(B) because he is an alien who has been convicted of two or more offenses that are not purely political offenses, regardless of whether the conviction was in a single trial or whether the offenses arose from a single scheme of misconduct and regardless of whether the offenses involved moral turpitude, for which the aggregate sentences to confinement were five years or more. He is also removable under 8 U.S.C. § 1182(a)(6)(A)(i) because he is an alien who entered the United States without inspection, admission, or parole at a time or place other than as designated by the Attorney General. Rignel Decl. ¶ 7.c.

21.    **Criminal Alien 8**: According to law enforcement databases, this criminal alien was convicted of one count of Sexual Abuse in the First Degree, one count of Using a Child in a Display of Sexually Explicit Conduct, and one count of Encouraging Child Sexual Abuse in the Second Degree in 2017. He was sentenced to a total of 160 months in prison, 45 months of post-prison supervision, and required to register as a sex offender. ICE issued a detainer to ODOC on or about August 25, 2017, that was not honored. Oregon officials released this criminal alien into the community in 2024 without notifying ICE. He is a native and citizen of Mexico and a Lawful Permanent Resident. Based upon a review of government databases, he is removable under 8 U.S.C. § 1227(a)(2)(A)(iii) because he is an alien who has been convicted of an aggravated felony at any time after admission. Rignel Decl. ¶ 7.d.

22.    **Criminal Alien 9**: According to law enforcement databases, this criminal alien was convicted in 2020 of Attempted Unlawful Sexual Penetration in the First Degree and sentenced to 45 months in prison and 75 months of post-prison supervision. ICE issued a detainer to ODOC on or about March 16, 2020, that was not honored. Oregon officials released this criminal alien into

**Page 8**        **Petition to Enforce Administrative Subpoenas**

the community without notifying ICE. He is a native and citizen of El Salvador and is a Lawful Permanent Resident. Based upon a review of government databases, he is removable under 8 U.S.C. § 1227(a)(2)(A)(iii) because he is an alien who has been convicted of an aggravated felony at any time after admission. Rignel Decl. ¶ 7.e.

23.     **Criminal Alien 11**: According to law enforcement databases, this criminal alien was convicted in 2015 of Recklessly Endangering Another Person. Then in 2016, he was convicted of one count of Rape in the First Degree and one count of Sodomy in the First Degree. He was sentenced to a total of 200 months in prison, 144 months of post-prison supervision, and required to register as a sex offender. ICE issued a detainer to ODOC on or about January 31, 2017, that was not honored. Oregon officials released this criminal alien into the community without notifying ICE. He is a native and citizen of Mexico illegally present in the United States. Based upon a review of government databases, he is removable under 8 U.S.C. § 1182(a)(2)(A)(i)(I) because he is an alien who has been convicted of, or who admits having committed, a crime involving moral turpitude (other than a purely political offense) or an attempt or conspiracy to commit such a crime. He is also removable under 8 U.S.C. § 1182(a)(6)(A)(i) because he is an alien who entered the United States without inspection, admission, or parole at a time or place other than as designated by the Attorney General. Rignel Decl. ¶ 7.f.

24.     **Criminal Alien 12**: According to law enforcement databases, this criminal alien was convicted of three counts of Sexual Abuse in the Second Degree involving a victim under the age of 14 in 2011. He was sentenced to 60 months supervised probation and required to register as a sex offender. He was convicted of Unlawful Possession of Methamphetamine in 2018 and sentenced to 18 months supervised probation. In 2019, this criminal alien was convicted of Unlawful Possession of Methamphetamine and Failure to Register as a Sex Offender and

**Page 9          Petition to Enforce Administrative Subpoenas**

sentenced to a total of 8 months' incarceration. In 2021, he was convicted of Burglary in the Second Degree and sentenced to 18 months of supervised probation. Less than two years later, in 2023, he was convicted of Burglary in the Second Degree and sentenced to 36 months of supervised probation. ICE issued a detainer to the Marion County Sheriff's Office on or about February 17, 2021, that was not honored. Oregon officials released this criminal alien into the community in 2022 without notifying ICE. He is a native and citizen of Micronesia illegally present in the United States. Based upon a review of government databases, he is removable under 8 U.S.C. § 1182(a)(6)(A)(i) because he is an alien who entered the United States without inspection, admission, or parole at a time or place other than as designated by the Attorney General. Rignel Decl. ¶ 7.g.

25.     **Criminal Alien 13**: According to law enforcement databases, this criminal alien was convicted in 2012 of Criminal Mischief in the Second Degree. In 2016, this criminal alien was convicted of Attempted Murder with a Firearm and sentenced to 90 months of prison and 36 months of post-prison supervision. ICE issued a detainer to ODOC on or about May 20, 2016, that was not honored. Oregon officials released this criminal alien into the community without notifying ICE. He is a native and citizen of Mexico illegally present in the United States. Based upon a review of government databases, he is removable under 8 U.S.C. § 1182(a)(6)(A)(i) because he is an alien who entered the United States without inspection, admission, or parole at a time or place other than as designated by the Attorney General. He is also removable under 8 U.S.C. § 1182(a)(2)(A)(i)(I) because he is an alien who was convicted of or who admitted having committed acts which constitute the essential elements of a crime involving moral turpitude. Rignel Decl. ¶ 7.h.

26.    **Criminal Alien 14**: According to law enforcement databases, this criminal alien was convicted of one count of Rape in the First Degree, one count of Kidnapping in the Second Degree, one count of Extortion, one count of Coercion, two counts of Assault in the Fourth Degree–Constituting Domestic Violence, and one count of Assault in the Fourth Degree in 2020. He was sentenced to a total of 194 months and 364 days in prison, several years' post-prison supervision, and required to register as a sex offender. ICE issued a detainer to ODOC on or about January 5, 2021, that was not honored. Oregon officials released this criminal alien into the community in 2025 without notifying ICE. He is a native and citizen of Mexico illegally present in the United States. Based upon a review of government databases, he is removable under 8 U.S.C. § 1182(a)(6)(A)(i) because he is an alien who entered the United States without inspection, admission, or parole at a time or place other than as designated by the Attorney General. Rignel Decl. ¶ 7.i.

27.    **Criminal Alien 16**:  On or about March 27, 2026, the United States withdrew Criminal Alien 16 from the subpoena issued to Marion County.

28.    **Criminal Alien 18**: On or about March 26, 2026, the United States withdrew Criminal Alien 18 from the subpoena issued to Marion County.

29.    **Criminal Alien 19**: According to law enforcement databases, this criminal alien was convicted of one count of Sexual Abuse in the Second Degree and one count of Strangulation–Constituting Domestic Violence in 2020. He was sentenced to a total of 96 months of imprisonment and 36 months of post-prison supervision. ICE issued a detainer to ODOC on or about December 2, 2020, that was not honored. Oregon officials released this criminal alien into the community in 2023 without notifying ICE. He is a native and citizen of Mexico illegally present in the United States. Based upon a review of government databases, he is removable under

**Page 11        Petition to Enforce Administrative Subpoenas**

8 U.S.C. § 1182(a)(6)(A)(i) because he is an alien who entered the United States without inspection, admission, or parole at a time or place other than as designated by the Attorney General. Rignel Decl. ¶ 7.j.

30.    **Criminal Alien 20**: According to law enforcement databases, this criminal alien has two prior convictions in Oregon. First, he was convicted in 2008 of one count of Rape in the First Degree and one count of Sexual Abuse in the First Degree. He was sentenced to a total of 175 months of imprisonment, 120 months of post-prison supervision, and required to register as a sex offender. In 2016, he was convicted of one count of Sexual Abuse in the First Degree involving a victim under the age of 14 and sentenced to 75 months in prison, 45 months of post-prison supervision, and required to register as a sex offender. ICE issued a detainer to ODOC on or about September 27, 2016, that was not honored. Oregon officials released this criminal alien into the community in 2022 without notifying ICE. This criminal alien is a native and citizen of Mexico illegally present in the United States. Based upon a review of government databases, he is removable under 8 U.S.C. § 1182(a)(6)(A)(i) because he is an alien who entered the United States without inspection, admission, or parole at a time or place other than as designated by the Attorney General. Rignel Decl. ¶ 7.k.

31.    **Criminal Alien 21**: According to law enforcement databases, this criminal alien was convicted of Assault in the Fourth Degree–Constituting Domestic Violence in 2012. He was sentenced to 24 months of supervised probation. In 2016, he was convicted of two counts of Sexual Abuse in the First Degree involving a victim under the age of 14. He was sentenced to a total of 150 months in prison, 45 months of post-prison supervision, and required to register as a sex offender. ICE issued a detainer to ODOC on or about November 14, 2016, that was not honored. Oregon officials released this criminal alien into the community without notifying ICE. He is a

**Page 12**        **Petition to Enforce Administrative Subpoenas**

native and citizen of Mexico illegally present in the United States. Based upon a review of government databases, he is removable under 8 U.S.C. § 1182(a)(6)(A)(i) because he is an alien who entered the United States without inspection, admission, or parole at a time or place other than as designated by the Attorney General. Rignel Decl. ¶ 7.l.

32.    **Criminal Alien 22**: According to law enforcement databases, this criminal alien was convicted of one count of Unlawful Sexual Penetration in the First Degree and one count of Sexual Abuse in the First Degree in 2016. He was sentenced to a total of 175 months in prison, 140 months of post-prison supervision, and required to register as a sex offender. ICE issued a detainer to ODOC on or about May 9, 2016, that was not honored. Oregon officials released this criminal alien into the community in 2025 without notifying ICE. He is a native and citizen of Mexico illegally present in the United States. Based upon a review of government databases, he is removable under 8 U.S.C. § 1182(a)(6)(A)(i) because he is an alien who entered the United States without inspection, admission, or parole at a time or place other than as designated by the Attorney General. Rignel Decl. ¶ 7.m.

33.    **Criminal Alien 23**: According to law enforcement databases, this criminal alien was convicted of two counts of Attempted Using a Child in a Display of Sexually Explicit Conduct and two counts of Attempted Sexual Abuse in the First Degree in 2017. He was sentenced to a total of 120 months in prison, 24 months of post-prison supervision, and required to register as a sex offender. ICE issued a detainer to ODOC on or about November 21, 2017, that was not honored. Oregon officials released this criminal alien into the community in 2025 without notifying ICE. He is a native and citizen of Mexico illegally present in the United States. Based upon a review of government databases, he is removable under 8 U.S.C. § 1182(a)(6)(A)(i)

**Page 13        Petition to Enforce Administrative Subpoenas**

because he is an alien who entered the United States without inspection, admission, or parole at a time or place other than as designated by the Attorney General. Rignel Decl. ¶ 7.n.

34.     **Criminal Alien 24**:  According to law enforcement databases, this criminal alien was convicted of Kidnapping in the Second Degree, Assault in the Fourth Degree–Constituting Domestic Violence, and Strangulation–Constituting Domestic Violence in 2016. He was sentenced to a total of 30 days in jail and 36 months of probation. In 2018, he was convicted of Attempted Rape in the First Degree, Sexual Abuse in the First Degree, Assault in the Second Degree–Constituting Domestic Violence, and Unlawful Use of a Weapon. He was sentenced to a total of 195 months in prison, 95 months post-prison supervision, and required to register as a sex offender. ICE issued a detainer to ODOC on or about August 15, 2018, and a detainer to the Marion County Sheriff's Office on or about November 7, 2025; neither were honored. Oregon officials released this criminal alien into the community 2025 without notifying ICE. He is a native and citizen of Guatemala illegally present in the United States. Based upon a review of government databases, he is removable under 8 U.S.C. § 1182(a)(6)(A)(i) because he is an alien who entered the United States without inspection, admission, or parole at a time or place other than as designated by the Attorney General. Rignel Decl. ¶ 7.o.

            **<u>Multnomah County</u>**:

35.     **Criminal Alien 25**: According to law enforcement databases, this criminal alien was convicted of one count of Rape in the First Degree–Constituting Domestic Violence in 2015. He was sentenced to 100 months in prison, three years' post-prison supervision, and required to register as a sex offender. ICE issued a detainer to ODOC on or about January 7, 2016, that was not honored. Oregon officials released this criminal alien into the community in 2023 without notifying ICE. He is a native and citizen of Mexico illegally present in the United States. Based

**Page 14        Petition to Enforce Administrative Subpoenas**

upon a review of government databases, he is removable under 8 U.S.C. § 1182(a)(6)(A)(i) because he is an alien who entered the United States without inspection, admission, or parole at a time or place other than as designated by the Attorney General. Rignel Decl. ¶ 8.a.

36.     **Criminal Alien 26**: According to law enforcement databases, this criminal alien was charged in 2010 with Driving Under the Influence of Intoxicants and entered diversion. That case was dismissed for completed diversion in 2012. In 2015, he was convicted of one count of Rape in the First Degree. He was sentenced to 100 months in prison, 140 months of post-prison supervision, and required to register as a sex offender. ICE issued a detainer to ODOC on or about May 17, 2016, that was not honored. Oregon officials released this criminal alien into the community in 2023 without notifying ICE. He is a native and citizen of Uzbekistan and a Lawful Permanent Resident. Based upon a review of government databases, he is removable under 8 U.S.C. § 1227(a)(2)(A)(iii) for being an alien who is convicted of an aggravated felony at any time after admission. Rignel Decl. ¶ 8.b.

37.     **Criminal Alien 27**: According to law enforcement databases, this criminal alien was convicted in 2016 of Coercion–Constituting Domestic Violence and sentenced to 3 years of probation. Then in 2017, this criminal alien was convicted of Sexual Abuse in the First Degree and sentenced to 75 months in prison and 120 months of post-prison supervision. ICE issued a detainer to ODOC on or about May 12, 2017, that was not honored. Oregon officials released this criminal alien into the community without notifying ICE. He is a native and citizen of Mexico illegally present in the United States. Based upon a review of government databases, he is removable under 8 U.S.C. § 1182(a)(6)(A)(i) because he is an alien who entered the United States without inspection, admission, or parole at a time or place other than as designated by the Attorney General. He is also removable under 8 U.S.C. § 1182(a)(2)(A)(i)(I) because he is an alien who was

**Page 15          Petition to Enforce Administrative Subpoenas**

convicted of or who admitted having committed acts which constitute the essential elements of a crime involving moral turpitude. Rignel Decl. ¶ 8.c.

38.    **Criminal Alien 28**: According to law enforcement databases, this criminal alien was convicted in 2017 of Theft in the Second Degree and sentenced to 12 months of probation. Then in 2020, this criminal alien was convicted of Sexual Abuse in the First Degree and sentenced to 75 months in prison and 120 months of post-prison supervision. ICE issued a detainer to ODOC on or about February 14, 2020, that was not honored. Oregon officials released this criminal alien into the community in 2025 without notifying ICE. She is a native and citizen of Mexico illegally present in the United States. Based upon a review of government databases, she is removable under 8 U.S.C. § 1182(a)(6)(A)(i) because she is an alien who entered the United States without inspection, admission, or parole at a time or place other than as designated by the Attorney General. She is also removable under 8 U.S.C. § 1182(a)(2)(A)(i)(I) because she is an alien who was convicted of or who admitted having committed acts which constitute the essential elements of a crime involving moral turpitude other than a purely political offense. Rignel Decl. ¶ 8.d.

39.    **Criminal Alien 29**: On or about March 26, 2026, the United States withdrew Criminal Alien 29 from the subpoena issued to Multnomah County.

40.    **Criminal Alien 30**: According to law enforcement databases, this criminal alien was convicted in 2020 of two counts of Sexual Abuse in the First Degree and sentenced to a total of 150 months in prison and 120 months of post-prison supervision. ICE issued a detainer to ODOC on or about September 8, 2020, that was not honored. Oregon officials released this criminal alien into the community in 2025 without notifying ICE. He is a native and citizen of Mexico. Based upon a review of government databases, he is a Lawful Permanent Resident who

**Page 16**        **Petition to Enforce Administrative Subpoenas**

is removable under 8 U.S.C. § 1227(a)(2)(A)(iii) for being an alien who is convicted of an aggravated felony at any time after admission. Rignel Decl. ¶ 8.e.

**Washington County:**

41.    **Criminal Alien 31**: According to law enforcement databases, this criminal alien was convicted in 2018 of Attempted Assault in the Second Degree and sentenced to 5 years of probation. That probation was revoked in 2023 and this criminal alien was sentenced to 19 months in prison and 3 years of post-prison supervision. ICE issued a detainer to Washington County Sheriff's Office on or about March 27, 2018, that was not honored. Oregon officials released this criminal alien into the community without notifying ICE. He is a native and citizen of the United Kingdom. Based upon a review of government databases, he is a Lawful Permanent Resident who is removable under 8 U.S.C. § 1227(a)(2)(A)(iii) for being an alien who is convicted of an aggravated felony at any time after admission. Rignel Decl. ¶ 9.a.

42.    **Criminal Alien 32**: According to law enforcement databases, this criminal alien was convicted in 1992 of two counts of Public Indecency and sentenced to 3 years of probation. Then in 1994, this criminal alien was convicted of Theft in the Second Degree and sentenced to 30 days in jail and 2 years of probation. In 1996, this criminal alien was convicted of Sexual Abuse in the First Degree and sentenced to 19 months in prison and 10 years of post-prison supervision. In 2025, this criminal alien was convicted of Failure to Report as a Sex Offender and sentenced to 2 years of probation. ICE issued a detainer to the Washington County Sheriff's Office on or about August 8, 2025, that was not honored. Oregon officials released this criminal alien into the community without notifying ICE. He is a native and citizen of Mexico illegally present in the United States. Based upon a review of government databases, he is he is subject to re-instatement of a prior removal order dated September 10, 1997, under 8 U.S.C. § 1231(a)(5) because he is an

**Page 17        Petition to Enforce Administrative Subpoenas**

alien who has reentered the United States illegally after having been removed or having departed voluntarily, under an order of removal, and is subject to a reinstatement of the prior order of removal from its original date and is not subject to reopening or review. He is also removable under 8 U.S.C. § 1182(a)(6)(A)(i) because he is an alien who entered the United States without inspection, admission, or parole at a time or place other than as designated by the Attorney General and under 8 U.S.C. § 1182(a)(2)(A)(i)(I) because he is an alien who was convicted of or who admitted having committed acts which constitute the essential elements of a crime involving moral turpitude. Rignel Decl. ¶ 9.b.

43.    **Criminal Alien 33**: According to law enforcement databases, this criminal alien was convicted in 2017 of three counts of Using a Child in a Display of Sexually Explicit Conduct and two counts of Rape in the Third Degree and sentenced to 238 months in prison and 3 years of post-prison supervision. ICE issued a detainer to ODOC on or about June 15, 2017, that was not honored. Oregon officials released this criminal alien into the community in 2022 without notifying ICE. He is a native and citizen of Mexico illegally present in the United States. Based upon a review of government databases, he is removable under 8 U.S.C. § 1182(a)(6)(A)(i) because he is an alien who entered the United States without inspection, admission, or parole at a time or place other than as designated by the Attorney General and under  8 U.S.C. § 1182(a)(2)(A)(i)(I) because he is an alien who was convicted of or who admitted having committed acts which constitute the essential elements of a crime involving moral turpitude. Rignel Decl. ¶ 9.c.

44.    **Criminal Alien 34**: According to law enforcement databases, this criminal alien was convicted in 2014 of three counts of Sodomy in the First Degree, eight counts of Sodomy in the Second Degree, three counts of Sexual Abuse in the First Degree, and one count of Sexual

Abuse in the Second Degree. In 2015, this criminal alien was sentenced on these charges to a total of over 1,000 months in prison and 3 years of post-prison supervision. In 2024, however, the judgment was amended to reflect convictions only for three counts of Attempted Sodomy in the Second Degree. ICE issued a detainer to Tillamook County Sheriff's Office on or about December 6, 2018, and to ODOC on or about August 10, 2022. Neither of the detainers were honored, and this criminal alien was released without notifying ICE. He is removable under 8 U.S.C. § 1182(a)(2)(A)(i)(I) because he is an alien who has been convicted of, or who admits having committed, a crime involving moral turpitude (other than a purely political offense) or an attempt or conspiracy to commit such a crime. He is also removable under 8 U.S.C. § 1182(a)(6)(A)(i) because he is an alien who entered the United States without inspection, admission, or parole at a time or place other than as designated by the Attorney General. Rignel Decl. ¶ 9.d.

45.     **Criminal Alien 35**: According to law enforcement databases, this criminal alien was convicted in 2017 of Sexual Abuse in the First Degree and sentenced to 75 months in prison and 10 years of post-prison supervision. ICE issued a detainer to ODOC on or about January 5, 2018, that was not honored. Oregon officials released this criminal alien into the community in 2024 without notifying ICE. He is a native and citizen of Mexico illegally present in the United States. Based upon a review of government databases, he is removable under 8 U.S.C. § 1182(a)(6)(A)(i) because he is an alien who entered the United States without inspection, admission, or parole at a time or place other than as designated by the Attorney General and under 8 U.S.C. § 1182(a)(2)(A)(i)(I) because he is an alien who was convicted of or who admitted having committed acts which constitute the essential elements of a crime involving moral turpitude. Rignel Decl. ¶ 9.e.

**Page 19        Petition to Enforce Administrative Subpoenas**

46.    **Criminal Alien 36**: According to law enforcement databases, this criminal alien was convicted in 2016 of Assault in the Fourth Degree–Constituting Domestic Violence and sentenced to 36 months of probation. Then in 2019, this criminal alien was convicted of two counts of Attempted Sexual Abuse in the First Degree and sentenced to a total of 36 months in prison and 5 years of post-prison supervision. ICE issued a detainer to ODOC on or about July 14, 2020, that was not honored. Oregon officials released this criminal alien into the community in 2022 without notifying ICE. He is a native and citizen of El Salvador illegally present in the United States. Based upon a review of government databases, he is removable under 8 U.S.C. § 1182(a)(6)(A)(i) because he is an alien who entered the United States without inspection, admission, or parole at a time or place other than as designated by the Attorney General and under 8 U.S.C. § 1182(a)(2)(A)(i)(I) because he is an alien who was convicted of or who admitted having committed acts which constitute the essential elements of a crime involving moral turpitude. Rignel Decl. ¶ 9.f.

47.    **Criminal Alien 38**: According to law enforcement databases, this criminal alien was convicted in 2016 of Rape in the First Degree, Unlawful Sexual Penetration in the First Degree, Sexual Abuse in the First Degree, and Assault in the Fourth Degree–Constituting Domestic Violence and sentenced to a total of 287 months in prison and 20 years of post-prison supervision. ICE issued a detainer to ODOC on or about May 16, 2016, that was not honored. Oregon officials released this criminal alien into the community without notifying ICE. He is a native and citizen of Mexico illegally present in the United States. Based upon a review of government databases, he is removable under 8 U.S.C. § 1182(a)(6)(A)(i) because he is an alien who entered the United States without inspection, admission, or parole at a time or place other than as designated by the Attorney General and under 8 U.S.C. § 1182(a)(2)(A)(i)(I) because he

**Page 20        Petition to Enforce Administrative Subpoenas**

is an alien who was convicted of or who admitted having committed acts which constitute the essential elements of a crime involving moral turpitude.  Rignel Decl. ¶ 9.g.

48.    **Criminal Alien 40**: According to law enforcement databases, this criminal alien was convicted in 2017 of Sodomy in the First Degree and two counts of Sexual Abuse in the First Degree and sentenced to a total of 250 months in prison and 20 years of post-prison supervision. ICE issued a detainer to ODOC on or about January 30, 2017, that was not honored. Oregon officials released this criminal alien into the community in 2024 without notifying ICE. He is a native and citizen of Mexico illegally present in the United States. Based upon a review of government databases, he is removable under 8 U.S.C. § 1182(a)(6)(A)(i) because he is an alien who entered the United States without inspection, admission, or parole at a time or place other than as designated by the Attorney General and under 8 U.S.C. § 1182(a)(2)(A)(i)(I) because he is an alien who was convicted of or who admitted having committed acts which constitute the essential elements of a crime involving moral turpitude. Rignel Decl. ¶ 9.h.

49.    **Criminal Alien 42**: According to law enforcement databases, this criminal alien was convicted in 2011 of Menacing – Constituting Domestic Violence and sentenced to 2 years of probation. Then in 2015, this criminal alien was convicted of Sexual Abuse in the First Degree and sentenced to 75 months in prison and 10 years of post-prison supervision. ICE issued a detainer to Washington County Sheriff's Office on or about November 30, 2020, that was not honored. Oregon officials released this criminal alien into the community without notifying ICE. He is a native and citizen of Mexico illegally present in the United States. Based upon a review of government databases, he is he is subject to re-instatement of a prior removal order dated November 18, 2011 under 8 U.S.C. § 1231(a)(5) because he is an alien who has reentered the United States illegally after having been removed or having departed voluntarily, under an order

**Page 21        Petition to Enforce Administrative Subpoenas**

of removal, and is subject to a reinstatement of the prior order of removal from its original date and is not subject to reopening or review. He is also removable under 8 U.S.C. § 1182(a)(6)(A)(i) because he is an alien who entered the United States without inspection, admission, or parole at a time or place other than as designated by the Attorney General and under 8 U.S.C. § 1182(a)(2)(A)(i)(I) because he is an alien who was convicted of or who admitted having committed acts which constitute the essential elements of a crime involving moral turpitude. Rignel Decl. ¶ 9.i.

50.     **Criminal Alien 44**: According to law enforcement databases, this criminal alien was convicted in 2020 of Rape in the Second Degree and Sexual Abuse in the First Degree and sentenced to a total of 150 months in prison. After a successful appeal, however, the judgment was modified to one conviction for Sexual Abuse in the First Degree and one conviction for Attempted Sexual Abuse in the First Degree with a total sentence of 89 months in prison and 10 years of post-prison supervision. ICE issued a detainer to ODOC on or about March 16, 2020, that was not honored. Oregon officials released this criminal alien into the community in 2025 without notifying ICE. He is a native and citizen of Mexico illegally present in the United States. Based upon a review of government databases, he is removable under 8 U.S.C. § 1182(a)(6)(A)(i) because he is an alien who entered the United States without inspection, admission, or parole at a time or place other than as designated by the Attorney General and under 8 U.S.C. § 1182(a)(2)(A)(i)(I) because he is an alien who was convicted of or who admitted having committed acts which constitute the essential elements of a crime involving moral turpitude. Rignel Decl. ¶ 9.j.

### C. HSI's Investigative Efforts to Locate the Criminal Aliens

51.    Between December 2025 and March 2026, HSI agents and ERO officers were assigned to attempt to locate the above-listed criminal aliens. During their attempts to locate these criminal aliens, HSI agents and ERO officers conducted surveillance at any last known and/or potential addresses found for each of the criminal aliens under investigation. Neither HSI agents nor ERO officers were able to locate these criminal aliens using their last known and/or potential addresses. Rignel Decl. ¶ 12.

52.    Between September 23, 2025, and March 23, 2026, HSI reviewed approximately 11 law enforcement databases and public databases to research the whereabouts of the criminal aliens. The checks were done by running their names, aliases, possible addresses, phone numbers, alien numbers, and FBI numbers if found. Results were then compiled and put into a target profile for each criminal alien. *Id.* ¶ 13.

53.    Further criminal history checks were run again on or about March 23, 2026, to look for any possible recent arrests of the criminal aliens. *Id.*

54.    Based on the information presently available concerning these criminal aliens, HSI has determined that each of them is likely subject to removal because they either (1) are present in the United States without being admitted or paroled, 8 U.S.C. § 1182(a)(6)(A)(i); (2) arrived in the United States at any time or place other than as designated by the Attorney General, *id.*; (3) were convicted of an aggravated felony at any time after admission, 8 U.S.C. § 1227(a)(2)(A)(iii); (4) were convicted of, admitted having committed, or admitted having committed acts which constitute the essential elements of a crime involving moral turpitude (other than a purely political offense) or attempted or conspired to commit such a crime, 8 U.S.C. § 1182(a)(2)(A)(i); or (5) were, at any time after admission, convicted of two or more crimes

**Page 23        Petition to Enforce Administrative Subpoenas**

involving moral turpitude, not arising out of a single scheme of criminal misconduct, regardless of whether confined therefor and regardless of whether the convictions were in a single trial, 8 U.S.C. § 1227(a)(2)(A)(ii). *Rignel Decl.* ¶ 10.

55.    Based on the information presently available concerning these criminal aliens, HSI has determined that each of them is likely subject to detention by ICE pending their removal. *See* 8 U.S.C. § 1225(b)(2)(A) ("[I]n the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding under section 1229a of this title"); 8 U.S.C. § 1225(a)(1) (defining an "applicant for admission" as "[a]n alien present in the United States who has not been admitted or who arrives in the United States (whether or not at a designated port of arrival and including an alien who is brought to the United States after having been interdicted in international or United States waters)"); *Buenrostro-Mendez v. Bondi*, 166 F.4th 494, 508 (5th Cir. 2026) (holding that all applicants for admission are detainable under 8 U.S.C. § 1225(b)(2)(A)); *Matter of Yajure Hurtado*, 29 I. & N. Dec. 216 (B.I.A. 2025) (same); 8 U.S.C. § 1226(c) (providing that the Attorney General "shall take into custody" aliens who have committed certain offenses, including aggravated felonies and crimes involving moral turpitude); 8 U.S.C. § 1226(a) ("On a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States."); 8 U.S.C. § 1241(a)(2)(A) (providing that the Attorney General "shall detain" aliens ordered removed). Rignel Decl. ¶ 11.

**D.  HSI's Subpoenas to Respondents**

56.    In 8 U.S.C. § 1225(d)(4)(A), Congress has authorized immigration officers to "require by subpoena . . . the production of books, papers, and documents relating to the privilege

**Page 24        Petition to Enforce Administrative Subpoenas**

of any person to enter, reenter, reside in, or pass through the United States or concerning any matter which is material and relevant to the enforcement of this chapter and the administration of the Service." The term "this chapter" in the statute broadly refers to Title 8, United States Code, Chapter 12 ("Immigration and Nationality"), which encompasses 8 U.S.C. §§ 1101–537, and the "Service" now refers to the U.S. Department of Homeland Security.

57.     On January 20, 2026, HSI issued administrative subpoenas directed to Respondent Clackamas County concerning Criminal Alien 3. Rignel Decl. Ex. 1 at 2. The subpoena was served upon Respondent Clackamas County on January 22, 2026. Rignel Decl. Ex. 2 at 1.

58.     On January 20, 2026, HSI issued an administrative subpoena directed to Respondent Marion County concerning Criminal Aliens 1, 4–9, 11–14, 16, and 18–24. Rignel Decl. Ex 1 at 6. The subpoena was served upon Respondent Marion County on January 22, 2026. Rignel Decl. Ex. 2 at 2.

59.     On January 20, 2026, HSI issued an administrative subpoena directed to Respondent Multnomah County concerning Criminal Aliens 25–30. Rignel Decl. Ex 1 at 16. The subpoena was served upon Respondent Multnomah County on January 22, 2026. Rignel Decl. Ex. 2 at 4.

60.     On January 20, 2026, HSI issued an administrative subpoena directed to Respondent Washington County concerning criminal aliens 31–36, 38, 40, 42, and 44. Rignel Decl. Ex. 1 at 12. The subpoena was served upon Respondent Washington County on January 22, 2026. Rignel Decl. Ex. 2 at 3.

61.     Each subpoena sought the following two sets of documents.

a.  Documents sufficient to establish the following for each criminal alien: home address(es) during the period of supervision; phone number(s) during the period of

**Page 25        Petition to Enforce Administrative Subpoenas**

supervision; Driver's License number and state; name of employer(s) during the period of supervision; employment address(es) during the period of supervision; country of birth, place of birth, date of birth; emergency contact number; and bail or bond records to include the obligor name and address; and

b. Documents sufficient to show the underlying criminal charge(s) related to the criminal alien's supervision, including but not limited to unredacted police reports, booking sheets, booking photos, probable cause statements, jail disciplinary records, or release agreements or release documents. Rignel Decl. at ¶ 16.

62.     The subpoenaed information will assist HSI and ERO in several ways. The basic identification information sought in the subpoenas will allow HSI and ERO to verify that the criminal aliens formerly held in Respondents' custody are in fact the same individuals that HSI is investigating. This corroboration can be obtained only by review of Respondents' documents. *Id.* at ¶ 18.

63.     The information concerning each criminal alien's addresses, as well as the contact information for each criminal alien's bond obligor and emergency contacts, will assist HSI and ERO in locating the criminal aliens and in assessing how best to safely take them into custody. HSI and ERO attempted to locate the criminal aliens at the addresses found within databases without success, so any further addresses or contact information the counties have will assist HSI and ERO in locating the criminal aliens without potentially expending further resources unnecessarily. Because the criminal aliens are subject to post-prison supervision by the Respondents, Respondents are likely to have more up-to-date contact and biographical information for the criminal aliens. HSI has been unable to obtain this information from any other source. *Id.* at ¶ 18–19.

**Page 26**        **Petition to Enforce Administrative Subpoenas**

64.    Obtaining multiple addresses (such as both home and work addresses) also aids law enforcement in ensuring that the apprehending officers have at least one correct address at which to locate the criminal aliens. If law enforcement obtains multiple addresses, they can choose an approach in apprehending the criminal aliens that minimizes the risk of harm to themselves, the criminal aliens, and the public. *Id.* at ¶ 19.

65.    Respondents' documents showing the criminal charge(s), such as police reports and probable cause statements, will assist HSI and ERO in preparing for officer and public safety when encountering the aliens after locating them. While HSI has access through databases to some basic information concerning the criminal charge, these sources do not typically contain any factual information regarding the underlying conduct that led to the arrest and charge. *Id.* at ¶ 20.

66.    Documents showing the criminal charge(s) also may include information that sheds light on where the criminal aliens may be found. These documents may include information about any bond obligor, who may have knowledge of the criminal aliens' most recent whereabouts. The documents also may reflect information gathered by law enforcement about where to locate the criminal aliens. *Id.* at ¶ 22.

67.    Documents containing the state criminal charge(s) also have independent evidentiary value in proving an alien's criminal history in either administrative or federal court proceedings. *Id.* at ¶ 23.

68.    Documents containing information relating to the criminal charge(s) assist HSI and ERO in various other ways: in assessing if the criminal alien is removable; in evaluating whether the criminal alien may and should be referred for criminal prosecution; and in assessing each criminal alien's potential level of dangerousness to ICE arresting officers and to the public. This

**Page 27        Petition to Enforce Administrative Subpoenas**

information can also aid HSI in assessing the appropriateness of detention of a criminal alien post-apprehension. *Id.* at ¶ 24.

69.    Unless Respondents provide the criminal charging documents, HSI has no other readily available source from which to access these documents and obtain the above-referenced information. *Id.* ¶ 17.

### E.    Respondents Have Not Complied with the Subpoenas

70.    The at-issue subpoenas required all Respondents to produce the requested documents by February 13, 2026. *See* Rignel Decl. Ex. 1.

71.    Respondent Clackamas County responded by letter dated January 27, 2026, that Clackamas County declined to comply with the subpoena without a judicially issued subpoena, citing O.R.S. § 181A.820 through .826. *See* Rignel Decl. Ex. 3 at 1. Respondent Washington County responded via email dated February 10, 2026, likewise declining to comply and citing the same statutes. *See id.* at 7. Respondent Multnomah County responded via letter dated February 13, 2026, declining to comply with the subpoenas and citing O.R.S. § 181A.826. *See id.* at 8. Respondent Marion County did not directly respond to the subpoenas but indicated in a filing in a separate legal action that, "Instead of agreeing or declining to provide responsive records, Marion County is gathering responsive records and seeks to clarify its legal obligations through this action." *See id.* at 5.

72.    When a recipient of an HSI subpoena does not comply, as here, the Attorney General or immigration officer "may invoke the aid of any court of the United States" to enforce the subpoena. 8 U.S.C. § 1225(d)(4)(A). "Any United States district court within the jurisdiction of which investigations or inquiries are being conducted by an immigration officer may, in the event of neglect or refusal to respond to a subpoena issued under this paragraph . . . issue an order

**Page 28        Petition to Enforce Administrative Subpoenas**

requiring such persons to appear . . . produce books, papers, and documents if demanded."

8 U.S.C. § 1225(d)(4)(B). "[A]ny failure to obey such order of the court may be punished by the

court as a contempt thereof." *Id*.

## IV.    ARGUMENT

73.    For the same reasons found in *United States v. Multnomah Cty. Dep't of Cmty.*

*Just.*, No. 6:25-CV-01784-MC at 2–4 (D. Or. Nov. 24, 2025), the at-issue subpoenas meet the

well-established controlling legal standards governing administrative subpoenas, and the Court

should again issue an order directing Respondents to comply with these subpoenas.

### A.    The subpoenas meet the controlling legal standards.

74.    The Supreme Court has held that an administrative subpoena "is sufficient if the

inquiry is within the authority of the agency, the demand is not too indefinite, and the information

sought is reasonably relevant." *United States v. Morton Salt Co.*, 338 U.S. 632, 652 (1950); *accord*

*McLane v. EEOC*, 581 U.S. 72, 77 (2017) (holding that if the information sought by an

administrative subpoena is relevant to the agency's inquiry, "the district court should enforce the

subpoena" unless the subpoena "is 'too indefinite,' has been issued for an 'illegitimate purpose,'

or is unduly burdensome") (quoting *EEOC v. Shell Oil Co.*, 466 U.S. 54, 72, n. 26 (1984)).

75.    The at-issue subpoenas meet this standard: (a) HSI's issuance of the subpoenas was

"within the authority of the agency"; (b) the demand in HSI's subpoenas was "not too indefinite";

and (c) the documents sought are "reasonably relevant" to HSI's investigations. *Morton Salt Co.*,

338 U.S. at 652; *see also* 8 U.S.C. § 1225(d)(4)(A) (granting HSI authority to issue subpoenas).

**Page 29        Petition to Enforce Administrative Subpoenas**

### (1)    HSI had authority to issue the administrative subpoenas.

76.    The first element of the *Morton Salt* test is met because issuing the subpoenas was "within the authority of the agency." *Morton Salt Co.*, 338 U.S. at 652; *see also* 8 U.S.C. § 1225(d)(4)(A) (granting HSI authority to issue subpoenas).

77.    HSI's authority under 8 U.S.C. § 1225(d)(4)(A) is not limited to determining the admissibility of aliens entering the United States. Under this section, Congress empowered HSI officers to issue administrative subpoenas to seek documents that relate to whether an alien may reside in the United States, *or* to aid in the enforcement of the immigration laws as to aliens.

78.    The Supreme Court has recognized that the administrative subpoena authority of a federal agency is broad because the purpose of an administrative subpoena is not adjudicative but is instead a power "to inquire." *United States v. Clarke*, 573 U.S. 248, 254 (2014) (explaining that the purpose of an IRS summons "is 'not to accuse,' much less to adjudicate, but only 'to inquire'"); *United States v. Powell*, 379 U.S. 48, 57 (1964) (discussing other agencies' administrative subpoena powers as a "power of inquisition") (quoting *Morton Salt*, 338 U.S. at 642–43). Administrative agencies possess "powers of original inquiry" that allow them to "take steps to inform [themselves] as to whether there is probable violation of the law." *Id*.

79.    As relevant here, Congress permitted such subpoenas to be issued "relating to the privilege of any person to enter, reenter, reside in, or pass through the United States or concerning any matter which is material and relevant to the enforcement of this chapter and the administration of the service." 8 U.S.C. § 1225(d)(4)(A). The statute authorizes HSI to issue subpoenas on matters "encompass[ing] the full range of subjects covered by the [the Immigration and Nationality Act of 1952]." *United States v. Minker*, 350 U.S. 179, 185–86 (1956) (considering this provision as it appeared in a predecessor statute). Although, as originally drafted, the provision permitted

**Page 30**        **Petition to Enforce Administrative Subpoenas**

subpoenas for "documents touching the right of any alien to enter, reenter, reside in, or pass through the United States," Congress later added language that "extended the subpoena power." *Id.* at 184. The "comprehensive addition of the clause 'or concerning any matter which is material and relevant to the enforcement of this Act and the administration of the Service', precludes [a] narrow[] reading" of HSI's subpoena authority. *Id.* at 185; s*ee also United States v. Van*, 931 F.2d 384, 387 (6th Cir. 1991) ("Although [this subpoena provision] appears in a part of the Immigration Act that describes the powers of INS agents on border patrol, the Supreme Court has held that the addition of the clause 'or concerning any matter which is material and relevant to the enforcement of the Act' encompasses the full range of subjects covered by the statute") (citing *Minker*, 350 U.S. at 184–85); *Sherman v. Hamilton*, 295 F.2d 516, 522 (1st Cir. 1961) (affirming district court's order enforcing subpoena under predecessor statute).

80.    Here, HSI is investigating the above criminal aliens who are subject to removal based upon their criminal convictions and/or their manner of entry into the United States. As part of its investigations, HSI seeks documents showing basic information relating to each criminal alien's identity, location, and criminal charge(s). These matters fall within the broad scope of inquiry authorized by Congress in 8 U.S.C. § 1225(d)(4)(A). HSI is authorized to investigate such matters. *Id.*

81.    Because HSI is authorized to investigate these criminal aliens, its subpoenas are authorized by 8 U.S.C. § 1225(d)(4)(A). *Cf. United States v. Ragauskas*, No. 94 C 2325, 1994 WL 445465, at *2 (N.D. Ill. Aug. 10, 1994) (enforcing an administrative subpoena under § 1225 in an investigation of a permanent resident alien suspected of collaborating with the Nazis, and concluding that "[c]learly, the investigation is authorized by Congress for a legitimate purpose"). Section 1225(d)(4)(A) does not require ICE to make any other showing. *Cf. Okla. Press Pub. Co.*

**Page 31        Petition to Enforce Administrative Subpoenas**

*v. Walling*, 327 U.S. 186, 198-99, 208-09 (1946) (where a statute permitted the Department of Labor to "investigate such . . . matters as he may deem appropriate to determine whether any person has violated any provision of the Act," it was "not necessary . . . that a specific charge or complaint of violation of law be pending or that the order be made pursuant to one. It is enough that the investigation be for a lawfully authorized purpose, within the power of Congress to command.").

### (2)    HSI's subpoenas for documents are not too indefinite.

82.    The second element of the *Morton Salt* test is met because HSI's subpoenas seek very specific, limited documentation and thus are not "too indefinite." 338 U.S. at 652. The definiteness requirement ensures that the records sought can be identified by their description in the subpoena. *Cf. Okla. Press Pub. Co. v. Walling*, 327 U.S. 186, 208 (1946) (explaining that a subpoena may be improper if there is "too much indefiniteness or breadth" in the request); *cf. Perez v. Alegria*, No. 15-mc-401-SAC, 2015 WL 4744480, at *3 (D. Kan. Aug. 11, 2015) (explaining that an administrative subpoena is sufficiently definite when "[a]ll of the categories of information are sufficiently specific to enable" the respondent "to understand what information the [agency] seeks").

83.    Each subpoena here is sufficiently definite. Each request in the subpoenas is a clearly defined and narrow set of information to establish for the criminal alien at issue: certain basic identification and address information and documents that show the criminal charge(s) relating to the criminal alien. *See* Rignel Decl. at ¶ 16; Rignel Dec. Ex. 1.

### (3)    The information sought is reasonably relevant to the investigations.

84.    Finally, the third element of the *Morton Salt* test is met because the documents sought are "reasonably relevant" to the ongoing investigations. 338 U.S. at 652.

85.     Courts have made clear that the scope of information that may be sought through an administrative subpoena is much broader than the subpoena authority available during a judicial process. In *Morton Salt*, a corporation challenged the authority of the Federal Trade Commission to issue administrative subpoenas because the agency allegedly was "engaged in a mere 'fishing expedition' to see if it can turn up evidence of guilt." *Id.* at 641. The Court cautioned that district courts should not "engraft judicial limitations upon the administrative process." *Id*. at 642; *see also id.* at 641 ("This case illustrates the difference between the judicial function and the [investigative] function the [agency] is attempting to perform."). Rather, administrative subpoenas can properly be based on "official curiosity" about whether a party has complied with the law. *See id.* at 652; *see also Phillips Petrol. v. Lujan*, 951 F.2d 257, 260 (10th Cir. 1991).

86.     Accordingly, where an agency has the authority to issue an administrative subpoena to investigate a matter, "relevance" is construed broadly. *See United States v. Arthur Young & Co.*, 465 U.S. 805, 813-14 (1984) ((holding that IRS subpoena was "not to be judged by the relevance standards used in deciding whether to admit evidence in federal court," that the IRS "should not be required to establish that the documents it seeks are actually relevant in any technical, evidentiary sense," and that "[r]ecords that illuminate any aspect of the return . . . are therefore highly relevant to legitimate IRS inquiry.")); *EEOC v. Dillon Cos., Inc.*, 310 F.3d 1271, 1274–75 (10th Cir. 2002) (observing that in the context of administrative subpoenas, the relevance requirement "is not especially constraining") (quoting *EEOC v. Shell Oil Co.*, 466 U.S. 54, 68 (1984)).

87.     Here, HSI's subpoenas meet the requirements for "reasonable relevance" because the documents sought relate directly to HSI's investigation of the criminal aliens. HSI has reasonably determined that the subpoenaed information will aid HSI in identifying the criminal

**Page 33       Petition to Enforce Administrative Subpoenas**

aliens, confirming their alienage, determining ways the criminal aliens could be contacted or located, and ascertaining their recent criminal activity and history. Additionally, this information will aid in determining whether the criminal aliens are removable, potentially securing their apprehension, and evaluating their dangerousness to ensure the safety of the public and law enforcement officers who may seek to apprehend them. The materials also have evidentiary value in administrative or federal court proceedings. Rignel Decl. at ¶¶ 18–24.

88.     In sum, the subpoenas meet all elements of the *Morton Salt* test. Accordingly, the Court should enforce the subpoenas. *Cf. Endicott Johnson Corp. v. Perkins*, 317 U.S. 501, 509 (1943) (holding that a district court had a "duty" to order production of evidence sought by the Department of Labor through an administrative subpoena where "[t]he evidence sought was not plainly incompetent or irrelevant to any lawful purpose of the agency"); *see also EEOC v. Children's Hospital Medical Center*, 719 F.2d 1426, 1428 (9th Cir. 1983) (subpoena should be enforced if agency can show elements of *Morton Salt* test have been met).

**B. The Court has recently granted a petition to enforce subpoenas that requested materials virtually identical to the material sought in these subpoenas.**

89.     As noted above, this Court previously granted a similar petition. *United States v. Multnomah Cty. Dep't of Cmty. Just.*, No. 6:25-CV-01784-MC at 2–4 (D. Or. Nov. 24, 2025). In 2025, HSI issued subpoenas to Respondents seeking documents relating to ten criminal aliens in Oregon—the same type of documents being sought in the current subpoenas and this Petition. All four Respondent counties declined to comply, and the United States was forced to petition this Court to enforce the subpoenas. On November 24, 2025, the Court issued an Opinion and Order granting the petition. In the order, the Court noted that Oregon law "explicitly permits state law enforcement agencies to 'exchange information with a federal immigration authority'" and found that the subpoenas were within HSI's authority, sufficiently definite, and relevant to HSI's

Page 34        Petition to Enforce Administrative Subpoenas

legitimate investigations. *United States v. Multnomah Cty. Dep't of Cmty. Just.*, No. 6:25-CV-01784-MC at 2–4 (D. Or. Nov. 24, 2025) (quoting *City & Cty. of S.F. v. Garland*, 42 F.4th 1078, 1085–86 (9th Cir. 2022)); Rignel Decl. at ¶ 26.

90.     The subpoenas at issue in this Petition seek the same type of information, under the same authority, and for the same purposes as the subpoenas enforced by the Court last year. They are equally definite and relevant to HSI's legitimate investigations. The Court should rule as it did in *Multnomah County* and order Respondents to comply with the subpoenas.

## V.    RELIEF REQUESTED

The United States respectfully requests that the Court issue an order pursuant to 8 U.S.C. § 1225(d)(4)(b) requiring Respondents to comply with the administrative subpoenas at issue.


DATED this 1st day of April, 2026.

SCOTT E. BRADFORD
United States Attorney
District of Oregon

*/s/ Andrew Kartchner*
ANDREW KARTCHNER
Assistant United States Attorney
*Attorneys for the United States*

**Page 35        Petition to Enforce Administrative Subpoenas**