IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 3:26-cv-00648-MC |
| Petitioner, | OPINION AND ORDER |
| v. | |
| MULTNOMAH COUNTY DEPARTMENT OF COMMUNITY JUSTICE; SUZANNE BROWN-MCBRIDE, Deputy Director, Multnomah County Department of Community Justice; CLACKAMAS COUNTY SHERIFF'S OFFICE PAROLE & PROBATION DIVISION; ANGELA BRANDENBURG, Clackamas County Sheriff; MARION COUNTY SHERIFF'S OFFICE, COMMUNITY CORRECTIONS DIVISION; NICHOLAS HUNTER, Marion County Sheriff; WASHINGTON COUNTY COMMUNITY CORRECTIONS PROBATION AND PAROLE; NATHAN GAOIRAN, Director, Washington County Community Corrections Probation and Parole; | |
| Respondents. | |

MCSHANE, Judge:

The United States filed a Petition with this Court to enforce thirty-one administrative subpoenas served on Respondent Counties Multnomah, Clackamas, Marion, and Washington by Homeland Security Investigations (HSI) operating under the direction of Immigration and Customs Enforcement (ICE). Pet., ECF No. 1. The Court has authority under 8 U.S.C. § 1225(d)(4)(B) to order compliance with administrative subpoenas issued under § 1225(d)(4)(A).

1 – Opinion and Order

Because federal and state law do not conflict and the subpoenas are enforceable, the United States' Petition (ECF No. 1) is **GRANTED**.

**BACKGROUND**

### I.    Statutory Scheme

To assist in identifying and locating noncitizens subject to detention and removal under federal law, ICE can subpoena information from state and local officials. *See* 8 U.S.C. § 1225(d)(4)(A). If recipients neglect to respond to administrative subpoenas, § 1225(d)(4)(B) authorizes district courts to order compliance.

Oregon sanctuary law prohibits state and local officials from using state resources to support federal immigration enforcement. *See* Or. Rev. Stat. §§ 181A.823, 181A.826. However, Oregon law permits state and county officials to answer judicially ordered administrative subpoenas. ORS 181A.823(1)(c)(A). Oregon law also expressly allows a state law enforcement agency to "exchange information with a federal immigration authority in order to request criminal investigation information . . . ." Or. Rev. Stat. § 181A.820(4).

### II.    Abbreviated Facts

On April 1, 2026, the U.S. Government filed this action to enforce thirty-one administrative subpoenas that Homeland Security Investigations issued to four Counties in Oregon: Multnomah, Clackamas, Marion, and Washington Counties. Pet., ECF No. 1. On April 13, 2026, the United States filed a Notice of Withdrawal of Criminal Alien Information from Subpoena because federal law enforcement authorities located the individual identified as "Criminal Alien 11." ECF No. 10.

HSI is the primary investigative arm of ICE and DHS. The entity conducts complex criminal investigations in part to prevent exploitation of vulnerable populations. Rignel Decl. ¶ 2,

ECF No. 3. HSI collaborates with ICE's Enforcement and Removal Operations (ERO) to investigate, identify, and locate "criminal [noncitizens] who are amenable to removal and/or criminal prosecution." *Id.* ¶ 3. HSI "routinely" requests information from local and state law enforcement agencies to locate criminal noncitizens, assess their removability, and "prepare for targeted arrests." *Id.* ¶ 4.

HSI has determined that the subject individuals in this case are likely subject to detention pending their removal under federal immigration law. Rignel Decl. ¶¶ 10–11. They are under investigation to assess both removability and possible detention. *Id.* at ¶¶ 5–9 (cataloging HSI information on subjects of outstanding subpoenas). After searching databases, compiling target profiles for each noncitizen, and conducting extensive surveillance, ICE has been unable to locate them. *Id.* ¶¶ 12–14.

In January 2026, HSI issued thirty-six total Immigration Enforcement Subpoenas to Respondents because the noncitizens were under post-prison supervision in their respective Counties.[1] Rignel Decl. ¶¶ 14, 20; *Id.* Ex. 1. Five such subpoenas were withdrawn prior to filing the Petition (Pet. ¶¶ 16, 17, 27, 28, 39), and another since then (ECF No. 10). Each subpoena requests two categories of information. Rignel Decl. ¶ 16. The first will assist HSI in identifying and locating the subject individuals, all convicted felons who have been released back into the community.[2] *Id.* ¶¶ 6–9, 19. The second category will assist officers in apprehending them.[3] *Id.* ¶¶ 20–21.

---

[1] Multnomah County received six subpoenas; Clackamas County received one; Marion County received nineteen; and Washington County received ten. Rignel Decl. ¶¶ 6–9; *id.* Ex. 1.

[2] Each subpoena requests documents sufficient to show: (1) home address(es) during the period of supervision; (2) phone number(s) during the period of supervision; (3) driver's license number and state; (4) name of employer(s) during the period of supervision; (5) employment address(es) during the period of supervision; (6) country of birth; (7) place of birth; (8) date of birth; (9) emergency contact number; and (10) bail or bond records to include the obligor name and address. Rignel Decl. ¶ 16.a.

[3] Each subpoena also requests documents "sufficient to show the underlying criminal charge(s)" for each individual, including but not limited to: (1) unredacted police reports; (2) booking sheets; (3) booking photos; (4) probable cause

3 – Opinion and Order

Upon receiving the subpoenas from HSI, three of the four Respondent Counties—Multnomah, Clackamas, and Washington—declined to comply pursuant to Oregon law. Ringel Decl. ¶ 25; *id.* Ex. 3. These counties filed responsive pleadings in this case. Clackamas Resp., ECF No. 12; Multnomah Resp., ECF No. 13; Washington Resp., ECF No. 14. On April 3, 2026, Marion County instead filed a Motion for Summary Judgment (ECF No. 8) requesting the Court enter a stipulated order granting the Petition as to the administrative subpoenas served upon it (ECF No. 8-1). The Court granted Marion County's motion and adopted the stipulated order on April 14, 2026. ECF No. 11. No issues remain concerning Marion County in this case.

## LEGAL STANDARD

"The scope of the judicial inquiry in an . . . agency subpoena enforcement proceeding is quite narrow." *E.E.O.C. v. Child.'s Hosp. Med. Ctr. of N. Cal.*, 719 F.2d 1426, 1428 (9th Cir. 1983) (en banc), *overruled on other grounds as recognized in Prudential Ins. Co. of Am. v. Lai*, 42 F.3d 1299, 1303 (9th Cir. 1994). Courts only determine whether the subpoenas are enforceable under *United States v. Morton Salt Co.*, 338 U.S. 632 (1950), and its progeny.

An administrative subpoena is "sufficient if the inquiry is within the authority of the agency, the demand is not too indefinite, and the information sought is reasonably relevant." *Morton Salt*, 338 U.S. at 652; *see also Child.'s Hosp. Med. Ctr. of N. Cal.*, 719 F.2d at 1428 (recognizing inquiry turns on whether agency has authority to investigate; whether it has followed procedure; and whether the evidence is relevant and material). If the agency establishes the *Morton Salt Co.* factors are met, courts should enforce the administrative subpoena, "unless the party being investigated proves the inquiry is unreasonable because it is overbroad or unduly burdensome." *N.L.R.B. v. N. Bay Plumbing, Inc.*, 102 F.3d 1005, 1007 (9th Cir. 1996) (citation modified).

---

statements; (5) jail disciplinary records; and (6) release agreements or release documents. Rignel Decl. ¶ 16.b. "HSI has been unable to obtain this information from any other source but Respondents." *Id.* ¶ 17.

**DISCUSSION**

Because there is no conflict between federal and state law, the question is simply whether HSI's administrative subpoenas satisfy the legal standards established under *Morton Salt Co.* and its progeny. This Court finds that they do.

**I.      Both federal and state law recognize the agency's authority to seek a subpoena enforcement order from this Court.**

Oregon law contemplates the bifurcated process—codified in §§ 1225(d)(4)(A)–(B)—for federal agencies to issue and enforce administrative subpoenas. Oregon sanctuary law permits state law enforcement agencies to provide information about someone in their custody to a federal immigration authority if required by a judicial subpoena. ORS 181A.823(1)(c)(A). Another provision specifies that "a judicial subpoena does not include an administrative subpoena created and signed by a federal immigration authority." Or. Rev. Stat. § 181A.823(2). This distinction evinces an understanding that federal courts can order state actors to comply with federal immigration subpoenas after they initially decline as required by Oregon law. Last, "far from limiting information sharing, Or. Rev. Stat. § 181A.820 *explicitly* permits state law enforcement agencies to 'exchange information with a federal immigration authority . . . .'" *City & County of San Francisco v. Garland*, 42 F.4th 1078, 1085–86 (9th Cir. 2022) (citing *Caruthers v. Kroger*, 222 P.3d 706, 707–08 (Or. 2009)). By filing a subpoena compliance action with this Court, HSI is simply proceeding to the next step after issuing an administrative subpoena as authorized in § 1225(d)(4)(B).

**II.    HSI has established that its Immigration Enforcement Subpoenas meet well-established legal standards and are thus enforceable by this Court.**

HSI's subpoenas are enforceable. First, the parties agree that immigration enforcement subpoenas are within ICE's (and by extension HSI's) authority. Congress may permit agencies to serve administrative subpoenas "for any purpose within Congress's constitutional power" without court authorization. *In re Nat'l Sec. Letter*, 33 F.4th 1058, 1063 (9th Cir. 2022). Section 1225(d)(4)(A) authorizes HSI to issue administrative subpoenas of its own accord, though the agency must invoke the power of this Court to enforce them. *Id.* The agency's subpoena power "encompasses the full range of subjects covered by [§ 1225's predecessor statute]." *United States v. Minker*, 350 U.S. 179, 185 (1956). Here, HSI's investigations into the noncitizens subject to removal fall within the statute's broad grant of subpoena power over "any matter which is material and relevant to" immigration enforcement. § 1225(d)(4)(A).

Second, the thirty remaining subpoenas are sufficiently definite. They solicit discrete pieces of information and documents relating to thirty individuals across four counties. ECF No. 6-1 (administrative subpoenas filed under seal). The subjects of the subpoenas are individuals convicted of sexual abuse and exploitation, including of minors, rape and attempted rape, assault constituting domestic violence, kidnapping, extortion, and coercion, often in conjunction and by repeat offenders. *See* Pet. ¶¶ 15–50. Petitioner does not seek enforcement of past or future subpoenas, just the ones at issue here. Pet'r Reply 4, ECF No. 15.

Third, HSI's subpoenas seek reasonably relevant information. Courts have adopted a "generous construction" of the term "relevant." *McLane Co. v. E.E.O.C.*, 581 U.S. 72, 76–77 (2017) (internal alterations omitted) (as revised). Administrative subpoenas are enforceable unless the information is "plainly incompetent or irrelevant to any lawful purpose of the agency."

6 – Opinion and Order

*E.E.O.C. v. Fed. Exp. Corp.*, 558 F.3d 842, 854 (9th Cir. 2009) (citation modified). As to the outstanding subpoenas here, HSI pursues records directly relevant to its investigations into the whereabouts and admissibility of the criminal noncitizens. The subpoenas request information to identify, contact, and locate them, as well as assess their "dangerousness." Rignel Decl. ¶¶ 17–25.

Because HSI has established that the subpoenas meet the *Morton Salt Co.* factors, this Court will enforce the subpoenas unless the Counties show they are unreasonable. Respondents Multnomah and Washington Counties implicitly challenge the subpoenas on the basis of overbreadth and burden. In particular, Multnomah County states that the Department of Community Justice and its Director "are not the likely custodians of several categories of documents" requested by the subpoenas the Department received. Multnomah Resp. 4. Similarly, Washington County argues Petitioner's request is overbroad where "some, but not all, of the documents" requested are in the County's possession. Washington Resp. 4. However, as the United States has clarified, the Petition does not seek to require production of any documents "not in the possession of Respondents" (Pet'r Reply 3), and the Court's order will not require as much. Further, because the Petition seeks only to enforce specific administrative subpoenas requesting specific information, Washington County's anti-commandeering concerns are not at issue here. Washington Resp. 4–5.

## CONCLUSION

Because federal and state law do not conflict and the subpoenas are legally enforceable, the United States' Petition (ECF No. 1) is **GRANTED** as to information requested by the administrate subpoenas provided to the Court in this action (ECF No. 6-1, 9) that is within the custody and control of each Respondent.

7 – Opinion and Order

IT IS SO ORDERED.

DATED this 5th day of June 2026.

                                    s/Michael J. McShane
                                    Michael J. McShane
                                United States District Judge

8 – Opinion and Order